UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBERT A. EDWARDS,

    Plaintiff,

v.                                         Case No. 5:02-cv-80-Oc-10GRJ

OFFICER HUMMEL, et al.,

    Defendants.

_____

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On March 11, 2002, Plaintiff, *pro se*, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. §1983, naming Correctional Officer Hummel, Correctional Officer Allin, and Correctional Officer Johnson as Defendants. Plaintiff alleged that Defendants deprived him of access to the courts and retaliated against him for the exercise of a constitutionally protected activity. (Doc. 1).

In an order dated September 19, 2003, this Court granted in part and denied in part Defendants' motion for summary judgment. (Doc. 36).[1] The Court dismissed Plaintiff's claim that Defendant Allin deprived Plaintiff of his psychiatric medication. Further, the Court found that Defendants were entitled to summary judgment on Plaintiff's claim that Defendants denied him access to the courts because Plaintiff failed to establish any injury as a result of Defendants' alleged deprivation of legal

---

[1] See Doc. 36 for a detailed account of Plaintiff's complaint.

materials. However, the Court denied summary judgment as to Plaintiff's claim that Defendants retaliated against Plaintiff for filing a post-conviction motion by withholding his legal materials because the Court could not conclude from the current record whether Plaintiff's legal materials were transferred with him when he left the Florida State Prison.

The Court set the remaining retaliation claim for trial for the trial term beginning January 31, 2005, but the case was continued indefinitely at Plaintiff's request. (Doc. 53). In an order dated June 13, 2005, the Court administratively closed the file, subject to Plaintiff's right to reopen the case within one year. (Doc. 60). In an order dated November 1, 2005, the Court granted Plaintiff's motion to reopen his case. (Doc. 63).

Now before the Court is Defendants' Motion for Judgment on the Pleadings, or, in the Alternative, Second Motion for Summary Judgment in which Defendants assert Plaintiff failed to exhaust his administrative remedies regarding his retaliation claim.[2] (Doc. 67-1). Defendants also maintain that Plaintiff fails to state a claim upon which relief can be granted for compensatory and punitive damages because Plaintiff fails to allege or demonstrate that he sustained a physical injury as a result of Defendants' alleged actions. On May 8, 2006, Plaintiff responded to the motion. (Doc. 75). This matter is now ripe for review. For the following reasons, the motion is due to be **GRANTED.**

---

[2] Because the Defendants' motion is supported by an affidavit, the Court will construe the motion as one of summary judgment.

## **Summary Judgment Standard**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. If the Court finds that the movant has satisfied the initial burden, the burden shifts to the non-moving party to provide sufficient evidence of every element he or she is required to prove at trial. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (1993), *reh'g and reh'g en banc denied*, 16 F.3d 1233 (11th Cir. 1994). If the party who has the burden of proof at trial fails to establish even one essential element of the case, "there can be no genuine issue as to any material fact" because the failure to establish one essential element "renders all other facts immaterial." Celotex, 477 U.S. at 322-23. The nonmoving party must go "beyond the pleadings, [and

show] that there exist genuine issues of material fact." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 586-87 (1986).

## Discussion

### A. <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act (PLRA) provides that :

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

There is no question that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382 (2006). "Congress now has mandated exhaustion in section 1997e(a) and there is no longer discretion to waive the exhaustion requirement." <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325 (11th Cir. 1998); <u>see</u> <u>also</u> <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001) (finding that Congress has mandated exhaustion of administrative remedies, regardless of the relief offered through the administrative procedures). In determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing <u>Alexander</u>, 159 F.3d at 1326).

In <u>Alexander</u>, the Eleventh Circuit noted seven important policies favoring an exhaustion of remedies requirement:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary

>factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

159 F.3d at 1327 (citation omitted).

Further, the PLRA's exhaustion requirement requires proper exhaustion. Woodford, 126 S. Ct. at 2382. The PRLA contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

The Florida Administrative Code provides an administrative remedy process for inmates of facilities within the Florida Department of Corrections (DOC). With certain exceptions, inmates initiate the process by submitting an informal grievance. If the inmate is dissatisfied with the response to the informal grievance, he can submit a formal grievance at the institutional level within 15 days of the response to the informal grievance. If the inmate is dissatisfied with the response to the formal

grievance, he can file an appeal with the Office of the Secretary within 15 days of the response to the formal grievance.

Defendants submit the affidavit of Katherine Shepherd, a DOC employee with the Bureau of Inmate Grievance Appeals, which states in part "I found no record of any grievance appeal filed by Inmate Edwards claiming that Officers Hummel or Johnson retaliated against him, or that officers retaliated against him by preventing him from possessing his legal material, in 1998."[3]  Plaintiff states that he does not dispute the affidavit included in Defendants' motion.[4]

The Court has reviewed the documents that Plaintiff appended to his Complaint as proof of exhaustion.  They show that Plaintiff submitted two grievances on March 21, 1998 complaining that he was not able to adequately represent himself in court because Defendants deprived Plaintiff of access to his legal materials.  Plaintiff complained that he was not able to adequately represent himself in court because Defendant Hummel placed his property in storage and he did not receive legal materials until he arrived at court.  Plainitff wrote "Mr. Hummel abused his discretion acting contrary to the rules governing property possession.  As a result,...I was deprived of effectively representing myself in court...."  On April 6, 1998, Plaintiff filed a formal grievance concerning his legal papers and books.  Plaintiff wrote that Defendant Hummel "abused his discretion when he impounded my property...."  The grievance was denied for lack of evidence to support Plaintiff's claim.  On April 22,

---

[3]Doc. 67-2.

[4]Doc. 75, pg., 1.

1998, Plaintiff filed an appeal, which was returned stating the institution would provide a response once a review was completed.

Also on March 21, 1998, Plaintiff submitted an informal grievance complaining that he was not able to adequately represent himself in court because Defendant Johnson withheld Plaintiff's legal materials. Plaintiff wrote "Captain Johnson...acted contrary to the rules governing inmate possession of property and thus abused his discretion." The request was returned as denied. On April 6, 1998, Plaintiff submitted a formal grievance complaining that Defendant Johnson abused his discretion by impounding Plaintiff's personal legal papers and law books. This grievance was investigated and denied due to lack of evidence of Plaintiff's allegations. On April 21, 1998, Plaintiff filed an appeal to the Secretary, it was returned stating the institution would provide a response once review has been completed.

Upon review of Plaintiff's grievances, the Court does not find any references to retaliation nor allegations of maliciousness similar to the allegations of the Complaint. Plaintiff's grievances make no claim that Plaintiff's property was withheld because of Plaintiff's activities in court. The claims in Plaintiff's grievance stand in marked contrast to his allegations in the Complaint. Plaintiff alleged in his complaint that Defendant Hummel removed ten files of legal work and sixteen personal law books, while stating to Plaintiff "'you know why' we are doing this so don't play dumb."[5] Plaintiff further alleged in his complaint that Defendant Allin told him that

---

[5] Doc. 1, paragraphs, 10-11.

this "is what happens when playing games in court...."[6]  Plaintiff alleged that when he asked Defendant Johnson for his legal materials, Defendant Johnson "responded by shrugging his head and laughing."[7]  Plaintiff alleged Defendants "intentionally and maliciously deprived Plaintiff of his legal materials obstructing and preventing his ability to prepare for the March 18, 1998 or March 20, 1998 hearings;" and "the foregoing deprivations, acts, or omissions.....were a burden to punish or harass Plaintiff for exercising his protected activity rights....for the sole purpose of retaliating and oppressing Plaintiff to operate for chilling the effect of protected activity rights...."[8]  Plaintiff's grievances contain none of these detailed and specific assertions of retaliation despite the fact that the grievances were submitted contemporaneously with the alleged loss of legal property, while the Complaint was prepared nearly four years later.

"Section 1997e(a) requires a prisoner to exhaust all 'available' administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has...."  Brown v. Sikes, 212 F.3d 1205,1207-08 (11th Cir. 2000).  Plaintiff did not include all known facts in his grievance, he failed to even mention retaliation or facts from which retaliation reasonably could be inferred.  Accordingly, Defendants were deprived of the opportunity to fully investigate and possibly address Plaintiff's claim

---

[6]Doc. 1, paragraph 12.

[7]Doc. 1, paragraph 16.

[8]Doc. 1, paragraphs 23(a), 26.

through the administrative grievance process.[9]  Alexander v. Hawk, 159 F.3d 1321 (11th Cir. 1998).  "[G]rievances must alert prison officials to a problem and give them an opportunity to address it.'"  Johnson v. Johnson, 385 F.3d 503, 518 (5th Cir.).  Accordingly, the retaliation claim must be dismissed for failure to exhaust administrative remedies.

### B. No Adverse Action

To state a claim for retaliation, a plaintiff must establish that: 1) he engaged in protected conduct; 2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and 3) the adverse action was motivated at least in part by the protected conduct.  Thaddeus-X v. Blatter, 175 F. 3d 378, 394 (6th Cir. 1999).  Even assuming *arguendo* that Plaintiff had exhausted his retaliation claim, in this case, the claim is not actionable because Plaintiff has not established an adverse action.  Plaintiff must show more than his "personal belief that he is the victim of retaliation."  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)(*quoting* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)).  Plaintiff has not demonstrated that his alleged deprivation of legal materials prior to his evidentiary hearing injured him in any way or that it was more that a *de minimus* inconvenience.  "It is not necessarily true, however, that every action, no matter how small, is constitutionally cognizable."  Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999).  *See also*  Davidson v. Chestnut, 193 F.3d 144, 150 (2nd Cir.

---

[9] The Court notes that Defendants raise an exhaustion issue that could have been addressed at the outset of this case.  However, Plaintiff is not prejudiced by addressing exhaustion at this stage of the case.  Plaintiff's claim arose in March 1998 and he waited four years before filing the instant action.
Accordingly, Plaintiff was time-barred from pursuing further administrative remedies when he initiated this case.  See R. 33-103.011, Fla. Admin. Code. (informal grievances must be received within a reasonable time of when the incident being grieved occurred; formal grievances must be received no later than 15 days from date the informal grievance was responded to or the date on which the incident being grieved occurred).

1999)(*asking* whether the retaliation alleged by an inmate rose to the level of that which would deter the exercise of a constitutional right).  Plaintiff has not shown how Defendants' alleged actions were anything but inconsequential.

## Conclusion

For the reasons set forth in this Order, Defendants' Second Motion for Summary Judgment.  (Doc. 67), is   **GRANTED.**  The Clerk shall terminate all pending motions and enter judgment accordingly.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 9th day of August 2006.

_____
UNITED STATES DISTRICT JUDGE

c:  Robert A. Edwards
    Counsel of Record